When you're ready. May it please the court, Ari Savitsky on behalf of the appellant William King. I'd like to reserve a minute and a half, if I can, for rebuttal. William King was at all relevant times a pretrial civil detainee, and he was nevertheless subjected to eight years in L.A. County Jail, in jail conditions, and six years in the harsh, isolated, restrictive ADSEG unit of L.A. County Jail. And I didn't pick this up from the stuff I had in front of me. Has he now had his hearing? Do we finally know the answer? So, Your Honor, it's not in the record, obviously. My understanding is that the hearing, the final determination, the underlying SVPA proceeding was actually concluded last week. So he had actually been back in county jail as recently as last week in the course of that hearing. Is he now on his way to Coalinga? So he is now, as of yesterday, is back at Coalinga. And since 2014, Coalinga has been the primary place where he's retired. Again, not in the record, but he does come back down to TTCF periodically when he has hearings. And under the SVPA statute, there's a yearly review. So he will be back at TTCF again. He will continue to be in danger of being subjected to ADSEG conditions. Okay. Got it. The egregious conditions that Mr. King suffered are presumptively unconstitutional under this court's decision in Jones v. Blanas. And so the posture here is review of a grant of summary judgment against Mr. King. Now, in order to obtain summary judgment, the defendants need to show that no rational trier of fact could conclude at the last stage of the Jones analysis that six years in ADSEG and eight years in jail conditions were excessive in relation to legitimate reasons that the defendants could proffer. Defendants didn't show this. In fact, King, despite litigating this case in very difficult circumstances, pro se civil rights plaintiff in the ADSEG unit was able to adduce evidence that, especially drawing all the inferences in his favor, from which a jury could conclude that his treatment was excessive, that six years in ADSEG was excessive, that eight years in jail conditions were excessive. And that was all he needed to do to survive summary judgment. Well, you're focusing on the six years, which is, of course, an important way of looking at this case. But if we're talking about adverse conditions, I should think if the conditions are materially worse within the meaning of Jones, I think it's sufficient for it to be a month. So, yes, I think that Jones certainly allows that conclusion. And there's language in Jones that suggests that some temporary confinement may be justified or not excessive in relation to a legitimate purpose, for example, being close to the site of a trial. And so we're not arguing that a couple weeks, maybe even a month in a unit in a county jail, particularly a unit that is genuinely separate from jail conditions and different, would be excessive. The problem is this many years of confinement in conditions that are basically indistinguishable from jail conditions. What are we supposed to do with the following? We've got conflict in the evidence as to, for example, the Irvine dispute. He says one thing, that Irvine and his enforcer set him up, that Irvine lied in seeking to get the restraining order and so on. But we have a judicial order that grants the restraining order. Can we look behind the restraining order and say, well, we're just looking at the facts to see what Irvine says, to see what your client says, and we've got a material dispute? Well, I certainly think that you can look behind the order, particularly in light of the fact that we're not talking about, you know, Mr. King being held for a couple weeks in response to the order and then, you know, the county sort of, you know, sorted out, looked at the circumstance of the order, realized that multiple statements in the Irvine declaration that supported this ex parte order were directly contradicted by TTCF's own disciplinary records. So the problem is that Mr. King would then spend five years in ADSEG, and no one looked behind the order. No one considered whether, you know, the order had any durational, you know, limit to it. I mean, there was no consideration. In fact, there's evidence in the record that the county determined that they would keep him there indefinitely. Could you address Mr. King's claim against Sheriff Baca and his individual capacity? So I think our leading case there is Starr versus Baca, and the standard is whether the official knew or should have known of the circumstances and acquiesced. But the only piece of evidence you've flagged is that the Irvine order was directed to Sheriff Baca. Is there, is that all there is in the record that would establish his having known and acquiesced in the treatment of Mr. King? So, no, there is some other evidence in the record. I think that the Irvine order is strong evidence. I think, you know, it's addressed to him, and a rational trier of fact would certainly presume that, you know, an official reads a court order that is personally addressed to them and names them. But if you look at the excerpts of the record at 609 to 610, there's a declaration that Mr. King put in describing his attempt to offer a  It's a declaration that the high-level officials had determined he was not going to get out. Again, this corroborates the idea that a high-level official, the sheriff himself potentially, was aware of this decision and had made it. And a jury could also infer just from the amount of time, it is extraordinary for a civil detainee, a pretrial civil detainee, to spend six years in conditions that this court held in 2004 are unconstitutional. So I think that there isn't conclusive evidence either way. I mean, I think that there's certainly evidence that ADCEG was used under TTCF's normal processes, you know, to deal with character issues and sort of it was used very regularly. And sort of part of the problem is that county policy allowed, you know, this use of ADCEG to also be directed at pretrial civil detainees. But I think there isn't evidence one way or the other, or there isn't conclusive evidence one way or another on that point. Sir, if this court overrules the decision of the trial court and rules in your favor, then the case would go back for trial. Would you anticipate a remand for trial? But the better way to have tried this case, and actually I'm not saying this just to fault you in retrospect, but to suggest going forward what happens, was to stipulate to the facts. Because the facts are pretty egregious on an objective standard and not leave to a jury the decision about an excessive incarceration when a jury might not have the same perspective or frame of reference. So if the facts were stipulated to, which frankly I leave you wondering what the difference between the treatment of a criminal detainee and a civil detainee is, because they look awfully similar to my assessment, it would be better to get these positions advanced before the court as matters of law rather than fact. Your Honor, I think that might be a very sensible way to proceed in trying the case. And I think the one point that I'd note is that we expressly requested that on a remand counsel be appointed for Mr. King. We think the case could proceed to trial, and that's precisely the type of complex litigation back and forth that counsel be well positioned to take care of, but that Mr. King is a very difficult case to handle, and so counsel would really help advance this litigation in an efficient manner. I agree with that, but Mr. King did a pretty darn good job, I thought. I realize we're going to run the risk of running you over time, but that's something we can deal with. What are we supposed to do with the comparison between his conditions of confinement and the conditions at Coalinga? Because that's one of the comparisons that Jones says is a relevant comparison, and we don't have much. At this stage, all we have is sort of a website that describes what happens there. Is that enough to produce a disputed material fact as to what the distinction is? I mean, obviously at trial we can do all kinds of stuff to figure out what happens at Coalinga. The website describes Coalinga, makes it sound pretty nice. Websites, can we look at that? Well, this is an official government website. It is judicially noticeable. We've cited cases in our opening brief supporting that point. There's not only the website, but there's also numerous decisions, lower court decisions, describing Coalinga in extensive detail, including one special master's report that goes on for pages and pages. And again, that is something that a court can look to. And I think the final point I'd note is that Mr. King offered a description of Coalinga that's corroborated by all these sources, and says in his brief, this is based on sources which the court can take judicial notice. And so at a minimum, Mr. King should have been notified that he needed to submit those rather than simply holding, as the court did here, oh, there's nothing in the record. Okay. Let's see. We've taken you over time. Let's hear from the State, but we will give you a chance to respond. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Rina Mathevosian for the County of Los Angeles and Leroy Blackwell. Your Honors, in this case, the District Court properly granted summary judgment based on the younger abstention doctrine. Oh, goodness. Really? What's the State process that's being interfered with? Your Honor, Mr. King was being charged with being a sexually violent predator, and there was a State court proceedings ongoing regarding that. And in what way is the relief that he seeks going to interfere with that? He wanted to be removed from county jail, and he wanted to be removed from ADCEG. He made numerous motions with the State court to be removed from ADCEG, to be removed from county jail. Yes, but that in no way would interfere with the proceeding to determine whether he was a sexually violent predator. That would only deal with the conditions of his confinement as that proceeding was going forward. Your Honor, actually, in his complaint, he actually asked for the sexually violent predator statute to be overturned, and I don't think that it could be separated from the relief he was seeking to be removed from the county jail. And why not? Why can't it be separated? Because it was part of his complaint. It was part of his complaint that he be removed from county jail. Even in non-pro se cases, we knock out parts of a complaint all the time, leaving the rest of the complaint to go forward. Your Honor, I do believe that abstention does apply to this case. Going to the other elements, the proceedings were ongoing. I believe that there was an important State interest. It was the interest of prosecuting the sexually violent predator detainee. Assuming we disagree with you on the younger abstention point, why wasn't there a genuine issue of material fact as to whether he was being held in violation of his right to due process under the analysis in Jones v. Blanas? I believe the evidence does support that King's housing in Ad Seg was legitimate, and he was housed there for non-punitive purposes. The county jail has one housing area for sexually violent predators. There was a court order saying that Mr. King could not be housed with other sexually violent predators. There would be no other place in the county jail to house him other than the Ad Seg unit. Well, he was in the Ad Seg unit for an extended period of time because there were intermittent disciplined infractions, right, that he would beat up somebody or he'd get into a fight or threaten somebody. Yes, Your Honor. But since the period of time that he was incarcerated there was so long, when you view the number and the kind of infractions that occurred that were used to keep him in the very harsh circumstances of Ad Seg, it seems it was almost cruel and unusual because they don't warrant that sort of intensive punitive incarceration for that period of time. So the reasons that were being used to keep him there, I don't represent substantial reasons to view him on an ongoing basis for six years as a threat to other inmates. So it seems as if that turns out to be sort of your cover story for keeping a problematic inmate, not necessarily a risk, but a problematic one, where you want him, and that is in these tightly controlled circumstances. When you looked at the kinds of events that gave rise to that administrative segregation, incarceration, did you think they warranted that length of time and that level of punitive consideration? I say you, meaning your policymakers. Your Honor, I believe that the prison officials had a difficult situation. There was Mr. King who had at least six inmate discipline reports against him for him starting fights with other civil detainees. There was court orders that ordered the Sheriff's Department to segregate Mr. King from the civil detainee. But forever? Regarding the protective order against Mr. King, there was no cutoff on the protective order, but after the 2001... So yes, forever. Is that typical? No, no, I yield to you. Is that typical? Well, I was a little surprised to see an ex parte order so that Mr. King didn't have any opportunity to respond to the charges that was just entered by the state judge without any time frame. Is that something that's typically done by state courts, and how does the policymakers, the county officials normally respond to something like that? Your Honor, Mr. King's case is not typical. As you can see from the record, he was actually the only sexually violent predator detainee held in ADSEG. This situation is not typical. I cannot speak as to whether it's typical for public defenders to seek out protective orders for their clients, protecting them from other detainees. And are they routinely issued in that way, or summarily without a hearing or anything? I've never seen one before. This is the only time I've seen one. Your Honor, based on Mr. King's unique circumstance, I believe that the prison officials had no other choice than to house him in ADSEG. Well, you know, that no other choice, that's kind of a tricky question because even assuming that the prison officials were required under the circumstances to take him out of what I call the Twin Towers, I guess, the place where the retired detainees, the sexually violent predator people who are going to be determined, I don't quite know how to refer to them. Even assuming that there's a court order to take him out of there, does that mean that they can put him anywhere? Or, to say it another way, you say, well, the only place they could have put him was ADSEG. But what if I tell you that ADSEG is an unconstitutional place to put him? How can the state respond, well, it's the only place I have, when in fact we know it's unconstitutional for him to be there? So I'm asking you to assume that it's unconstitutional for him to be there, given the conditions. I'm not asking you to concede that. But doesn't the state have some obligation to put him somewhere that is constitutionally permissible instead of just to say, well, the only place we have is this rat-infested dungeon or some unconstitutional place? Your Honor, the California Penal Code does require that sexually violent predator detainees be segregated from the general population. They could put him up in a hotel, right, under guard. I mean, he's not convicted of anything. He's an innocent person. He's just having pending civil proceedings. Yes, Your Honor, but he was held in a single man cell. There was no evidence that it was rat-infested. Well, that was an exaggeration. He was there 23 hours a day. He was given 30 minutes a day for being outside of his cell. I mean, it's obviously very punitive conditions in there. And I was sort of amused by the nature of the courtesies that were offered, like a plastic chair. That was in a good place. Usually when the Bureau of Prisons creates the assignment mechanisms for classifying prisoners, and the jails as well, it's a very nuanced sort of process, that they have many factors that they weigh in the classification process to make sure that somebody is properly housed, reflecting risks and health needs and age. This man was 70 or so. In the system that we're looking at in the context of this case, there seemed to be none of those aspects. It's just sort of a blunt force determination that somebody picks fights and is there for unsavory reasons. So I wonder if that had anything to do with it, that he was being civilly committed for purposes that are viewed by many as being unsavory. So if that's the way he gets treated as sort of a lesser part of the process, and overlooked in that way. Your Honor, I believe the record supports that he was housed in ADSEG to maintain jail security. Right. That would be one factor in a well-placed jail classification system. Not the only one. That's the only one I could find for why you kept him there. And I repeat that it doesn't seem to me that there's much difference between the standards for a civil and a criminal detainee. If anything, this man got less as a civil detainee. Do you think there's a separate classification system that ought to apply to a civil detainee? Your Honor, there was a separate classification system that did apply to sexually violent predator detainees. Mr. King was not housed with the other sexually violent predator detainees. He was housed separately because of his fights with the sexually violent predator detainees and the court orders. But there was a separate housing for the sexually violent predators. That's where they got these gratuities or favors or the plastic chair sort of thing. Yes, Your Honor. According to the record and King's own declarations, they got to watch TV all day. They celebrated Thanksgiving. That was his declaration that the others did. He didn't. He was locked in his cell. Remember? Yes, Your Honor. This was at the Twin Towers Correctional Facilities you're talking about. He got an extra blanket, servings of hot water, plastic chair, and they had the television set on. In the sexually violent predator detainee unit, yes, Your Honor. In the F pod at the Twin Towers Correctional Facility. Yes. The record also supports that, according to King's own declaration, that the TV was on all day, that the detainees could commingle and there was no bedtime. Within the pod. Yeah. They couldn't exit the pod. Yes, Your Honor. They didn't go outside. And how do those conditions compare with the conditions at Coalinga? Because that's what Jones tells us we should compare to. Your Honor, there was no evidence in the record as to what the conditions at Coalinga were. Given that he's pro se and given that he's given us what the state itself tells us are the conditions, can't we, for purposes of summary judgment in a pro se case, hold the state to what the state puts on its website as to the conditions in Coalinga? I don't believe it was part of the record, Your Honor. Well, as to judicial notice. I understand judicial notice is occasionally tricky, but in the circumstances of a pro se litigant who can't send his lawyer or his investigator up to Coalinga, can't get affidavits easily, for him to rely on what the state itself says are the conditions at Coalinga and to use what the state itself says as against the state, what's wrong with that? I don't think that the court could take judicial notice of an advertisement on a hospital website. Well, aren't these facts not in controversy? I mean, wouldn't the state be in a position to stipulate to the conditions that exist at Coalinga? I mean, isn't this sort of a chase down a rabbit hole to say that the record is not developed and there might be facts in controversy? Really? I mean, it's your system. So can't you say this is what we give them and these are the circumstances? Your Honor, I don't represent the state. I represent the county, and I'm not aware of what the conditions at Coalinga are. The jail and Coalinga are not connected in any way. Your Honor, I do believe that there was a legitimate non-punitive interest in housing Mr. King in ATSAG, and I'd ask that the court affirm the district court's decision. Why don't we put a minute on the clock, please? Any good advocates can say it all in a minute anyway, right? I'll try, Your Honor. Thank you very much. The only point that I'd respond to, I suppose, is the idea that there were six disciplinary reports that justified Mr. King's placement in ATSAG. As we noted in the brief, two of those are reports that were found by TTCF staff to be unfounded. Those are the Penn-related reports from Brinkley and Irvin. Those are deemed unfounded. Two of them are non-violent. They're insubordination-related events that happened well after King had been in ATSAG. One of them was also from after he was in ATSAG. That's in July 2008. This is a scuffle with a much younger inmate who was the floor trustee, and the only one, the only incident of any type of violence that occurred before Mr. King was put in ATSAG for that second five-year stint is a 2006 incident in which there's a scuffle with another SEPA detainee named Mr. Ramos. And again, Mr. Ramos is younger, and there's evidence in the record about why that happened. And Mr. King was disciplined for that and then returned to Epcot. So I really, I think that a jury could certainly find that this was excessive. Is part of your case the length of time that he was detained prior to a final determination? Is that also part of the excessive nature of this case? Absolutely. I think both with respect to Mr. King's time in TTCF and county jail and those county jail conditions, jail-like conditions, and with respect to ATSAG, six years, eight years. I mean, those are, those go directly to whether the conditions were excessive and whether they were punitive. You know, a couple days might not be punitive. Six years is quite punitive. Okay. Thank you. Thank both sides for their arguments. Now, I don't mean this as any way indicative as to merits, but your firm is doing this pro bono. And I always say this when we get pro bono lawyers coming in here. It's very helpful to us in our deliberations. Thank both sides for their arguments. I'll thank you, but you're just doing your job, too. So thank both of you. King v. County of Los Angeles, submitted for decision.
judges: W. Fletcher, Ikuta, Barker